IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.:  3:14cr98/TKW/HTC
                                                       3:17cv672/TKW/HTC

RODNEY D. BUTLER

---

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Rodney D. Butler's *pro se*
Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Judgment by a
Person in Federal Custody (ECF Doc. 698).    After consideration of the petition, the
record, the relevant law, and the Government's response (ECF Doc. 707), the
undersigned recommends the motion be DENIED without an evidentiary hearing.
*See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.    Without exception,
Butler's claims of ineffective assistance of counsel are bare and conclusory and
woefully lacking in any factual and legal support.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On December 16, 2014, a grand jury charged Butler in a superseding
indictment with conspiracy to possess with intent to distribute five (5) kilograms or
more of a mixture and substance containing cocaine in violation of 18 U.S.C.

§§ 841(b)(1)(A)(ii) and 846 ("Count One"), conspiracy to use a communication facility to facilitate the commission of a felony in violation of 21 U.S.C. §§ 843(b) and 846 ("Count Two"), and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i) and (h) ("Count Three").   ECF Doc. 131. Butler was not charged in Count Four.

On March 30, 2015, Butler pled guilty before Magistrate Judge Elizabeth Timothy pursuant to a written plea agreement, Factual Basis for Guilty Plea, and supplement.   ECF Doc. 376-380.   Butler was represented by retained counsel Letitia Quinones, Esq., whom Butler now contends was ineffective.   During the plea colloquy, Butler admitted that the facts set forth in the written Factual Basis were true and correct.   ECF Doc. 615 at 11.

The Factual Basis (ECF Doc. 377) described Butler as a source of supply for the transportation and distribution of cocaine from the Houston area into Shreveport, Louisiana and Pensacola, Florida.   Butler arranged for the transportation of multiple kilograms of cocaine (or the equivalent in illicit U.S. currency) on each trip. Butler and the co-conspirators used cellular telephones to communicate via voice or text to arrange the transactions.

During the course of investigation, law enforcement intercepted Butler on multiple federal wiretaps arranging for the payment and transportation of kilogram quantities of cocaine.    Butler also conspired with others to launder drug proceeds through bank accounts at Wells Fargo banks in two states.    The Factual Basis stated that Butler conspired to distribute and possess with intent to distribute in excess of 50 kilograms of cocaine between the Houston area and Pensacola, an admission he specifically reaffirmed during the plea colloquy.    ECF Doc. 615 at 14-15.    He also admitted having laundered "tens of thousands of dollars" of cocaine derived currency through Well Fargo bank accounts.    Finally, the Factual Basis included an affirmation that Butler and his attorney had reviewed the jury instructions related to his offenses.

The Presentence Investigation Report ("PSR") calculated Butler's total offense level at 39.    ECF Doc. 542, PSR ¶ 141.    This reflects a base offense level of 34, a two level increase for criminal livelihood, a two level increase for the money laundering conviction under 18 U.S.C. § 1956, a four level increase due to Butler's leadership role, and a three level reduction for acceptance of responsibility.    His criminal history category was IV, and the applicable advisory guidelines range was 360 months to life imprisonment.    *Id.,* PSR ¶ 191.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

At sentencing, Butler objected to the leadership role and "criminal livelihood" adjustments.    ECF Doc. 613 at 3.    The Court overruled the objections and sentenced him to a total term of 300 months' imprisonment, below the applicable guidelines range.    ECF Docs. 565, 566, 613.    Butler appealed the court's ruling on his guidelines objections.    The Eleventh Circuit affirmed on February 23, 2017, finding no error.    ECF Doc. 684.

In May 2017, Butler filed a motion for appointment of counsel, claiming his retained attorney had been constitutionally ineffective in her representation of him. ECF Doc. 691.    The document enumerated thirteen "Facts" identifying alleged errors of counsel.    The Court construed the submission as a motion pursuant to 28 U.S.C. § 2255 (ECF Doc. 692) and issued a *Castro*[1] warning, following which Butler withdrew the motion without prejudice.    ECF Docs. 693-97.    Shortly thereafter he filed the instant motion, identifying fourteen "Facts" containing various complaints about defense counsel's failures, which the undersigned will liberally interpret as his purported grounds of error.    ECF Doc. 698.

---

[1] The Supreme Court held in *Castro v. United States*, 540 U.S. 373, 383 (2003), that when a district court recharacterizes a pro se motion as a § 2255 habeas petition, it must: 1) notify the litigant of the pending recharacterization; 2) warn the litigant that the recharacterization will subject any subsequent § 2255 motion to restrictions; and 3) provide the litigant an opportunity to withdraw the motion or amend it to include all available § 2255 claims.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

## II.    APPLICABLE LEGAL STANDARDS

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and, thus, are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.    *Strickland v.*

*Washington*, 466 U.S. 668, 686 (1984).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000).   A defendant must provide factual support for his claims.   *See Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   Like the "performance" prong, "the 'prejudice' prong is difficult to meet." *Johnson v.*

*Alabama*, 256 F. 3d 1156, 1177 (11th Cir. 2001).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).    Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.    *Glover v. United States*, 531 U.S. 198, 203–04 (2001).

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.

*See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).

## III.   BUTLER'S MOTION

Butler's motion consists of nothing more than barebones, conclusory, and speculative allegations that are insufficient to establish a deficiency in counsel's performance, much less a constitutional violation under *Strickland*.   His alleged "Facts" are unsupported by the record.   In support of his motion, Butler merely makes vague references to the PSR or the sentencing transcript, without any attempt to explain their relevance.   Despite focusing solely on alleged instances of ineffective assistance of counsel, nowhere in the motion does Butler even once explain how any conduct was prejudicial to him or would have otherwise resulted in a different sentence.   Moreover, despite the Government's response, which placed Butler on notice of the deficiency in his claims, he failed to submit a reply.   *See* ECF Doc. 699 (order giving Butler 30 days to file a reply).

Also fatal to his claims is that he knowingly and voluntarily pled guilty and admitted to his involvement and his role in the multi-state drug conspiracy at issue.

Butler does not take issue with his change of plea proceedings. He does not contend that there was any error in those proceedings. He does not claim that any statements he made during those proceedings were false or that he did not understand them. He does not contend he was provided ineffective assistance of counsel at those proceedings. His statements, admissions, and declarations during those proceedings as well as findings by the judge in accepting said plea, constitute a formidable barrier in any subsequent collateral proceedings, and carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

As stated above, the motion purports to set out fourteen grounds of error as separately numbered "facts" (although there may be more than one argument contained under one "fact"). Each fact is addressed below, although some of have been combined for efficiency and clarity of argument.

## A. "Fact One": Stipulation Of Knowledge And Intent

Butler claims counsel was ineffective when she entered into a stipulation that "relieved [the] Government of its burden of having to prove [his] knowledge and intent." ECF Doc. 698 at 5. A review of the record, however, shows that no such stipulation was entered.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

To the contrary, as Butler was advised during the change of plea hearing, Butler waived his right to require the Government to prove the elements of the three offenses to which he was pleading guilty beyond a reasonable doubt when he chose to plead guilty. ECF Doc. 615 at 11. The elements of the subject offenses include knowledge and intent, and Butler confirmed to the Court during the plea colloquy that he went over those jury instructions with his counsel and that he understood them. *Id.* at 12; Eleventh Cir. Pattern Jury Instr., Criminal Cases (2010) 100, 99, 98 & 74.5. Thus, it was Butler's counseled, voluntary, knowing and intelligent guilty plea, and not any stipulation by counsel, that relieved the Government's burden.[2]

Accordingly, Butler is not entitled to relief on this ground. Indeed, his allegations are affirmatively contradicted by the record. *See United States v. Laetivildal Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991), *quoting Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).

## B. Failure to Investigate or Subpoena Co-Defendants

Butler asserts as separate "facts" that his counsel was ineffective for failing to

---

[2] Butler references paragraphs 23-25 of the PSR in support of this purported ground for relief. However, the referenced paragraphs describe traffic stops and the subsequent cooperation of a co-defendant; they have no obvious relevance to the alleged stipulation.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

subpoena certain co-defendants to the sentencing hearing.    *See* ECF Doc. 698, Fact

2, 6-9, 12-13.    He offers neither proof that any of the co-defendants were willing to

testify nor a proffer of the testimony counsel should have procured.    Butler does

not state how any such testimony would have altered his sentence i.e., how he has

been prejudiced.

The prejudice burden is heavy where a movant alleges ineffective assistance

in failing to call a witness because "often allegations of what a witness would have

testified to are largely speculative."    *Sullivan v. DeLoach*, 459 F.3d 1097, 1109

(11th Cir. 2006) (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir.1980)).

Bare, conclusory allegations of ineffective assistance such as those presented by

Butler herein are insufficient to satisfy the *Strickland* test.    *See Garcia v. United

States*, 456 F. App'x 804, 807 (11th Cir. 2012).    Thus, as an initial matter, none of

these purported grounds for relief have merit.    Nonetheless, the undersigned will

address each.

1. "Fact" 2, 14:   Antonio Blackwell

Butler contends counsel was ineffective because she did not investigate co-

defendants Antonio Blackwell, Aston Ingram and Dexter Locke, whom Butler

describes as key Government witnesses.    *See* Subsections B.2 and 5, for

discussions regarding Ingram and Locke.    Butler references three paragraphs of the PSR, presumably to support this purported ground for relief.    While Paragraph 21 relates to Blackwell, it does not show that counsel was ineffective for not investigating Blackwell.[3]    To the contrary, it shows that there was no reason to investigate Blackwell, who admitted to obtaining cocaine from Butler and identified Butler's courier (and his girlfriend) as co-defendant Vernetta Harrison.    ECF Doc. 437, ¶ 21.    Butler does not suggest what information Blackwell could have provided to reduce his sentencing exposure.

2. "Fact" 2, 9, 13, and 14:    Aston Ingram

In "Fact 2," Butler alleges Ingram wrote two letters telling Butler about how the Government had "advised Ingram on what to say in exchange for a reduction in his sentence."    ECF Doc. 698 at 5.    Additionally, Butler references ¶ 25 of the PSR, which relates to what the Government learned from Ingram.    Even assuming such allegation to be true, nothing in what Butler alleges establishes that anything Ingram may have told investigators was false or otherwise shows that an investigation by his counsel would have altered the outcome of the case.[4]

---

[3] Butler also references ¶ 24, which does not relate to Blackwell, Ingram, or Locke, and ¶ 25, which does not relate to Blackwell.

[4] The Assistant United States Attorney who prosecuted this case, David Goldberg, also authored

In "Fact 9," he also complains that counsel was ineffective for failing to object to the Government's admission of Ingram's "statements" about Butler trying to hire someone to kill Goodman. *See* ECF Doc. 542, PSR ¶ 25. He claims that Ingram only made these statements to get a lighter sentence since the Government was "threatening" Ingram with a life sentence under the Armed Career Criminal Act. In "Fact 13," Butler complains that counsel was ineffective for not objecting to the Government's introduction of Ingram's statements without Ingram being subpoenaed. He contends counsel did nothing to show that Ingram's statements were false.

None of these allegations regarding Ingram support an ineffective assistance of counsel claim. Butler fails to identify what statements were false, why the statements were objectionable, why Ingram would have faltered from them had he been subpoenaed, or how an objection to them would have altered his sentence. While he faults his counsel for failing to "investigate how these statements were being supported," Butler also fails to identify what any such investigation would have uncovered. Additionally, counsel's "decision to limit investigation is

---

the Government's § 2255 response. The response includes the statement "[t]he undersigned certainly did not engage in any such conduct, [and] the undersigned is not aware of any such conduct." ECF Doc. 707 at 14, n. 2.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

accorded a strong presumption of reasonableness." *Williams v. Head,* 185 F. 3d 1223, 1237 (11th Cir. 1999) (quoting *Mills v. Singletary*, 63 F. 3d 999, 1021 (11th Cir. 1995)).

Moreover, Ingram, like Butler, was afforded the opportunity to cooperate with the Government by providing truthful information about the conspiracy in hopes of receiving a reduction in his sentence.   Butler admitted via the Factual Basis that Ingram was one of the co-conspirators in conjunction with whom he worked to further his illicit activity.   The mere fact that Ingram was hoping to receive a sentence reduction as a result of providing information about co-conspirators is not, alone, enough to render the information suspect.   Butler's conclusory assertion does not establish that counsel was constitutionally ineffective for her failure to probe into this matter.   *See Boyd v. Commission, Alabama Department of Corrections*, 697 F.3d 1320, 1333-1334 (11th Cir. 2012) (Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test).

3. "Fact 6":   Terrance Stone and Terrance Goodman

Butler maintains that counsel was constitutionally ineffective because she did not subpoena co-defendants Terrance Stone and Terrance Goodman, or object to Paragraphs 20 and 25 of the PSR, the only paragraphs where either man was

mentioned.    Paragraph 20 describes the Escambia County Sheriff's Office investigation of the DTO as starting with the seizure of a kilogram of cocaine from Stone, who refused to identify his source of supply at the time.    Paragraph 25 contains co-defendant Ingram's description of Goodman's involvement in the conspiracy, as well as the claim that Butler was looking for someone to kill Goodman because Goodman owed Butler $60,000.

Butler does not suggest what testimony the two men would have offered that would have affected the outcome of his case, how their testimonies would have been different from the information contained in the PSR, or state what objections should have been asserted or why.    All he says is that the men are mentioned in the PSR – that is clearly not sufficient to warrant relief under *Strickland*.    *See Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006) (Where the defendant does not provide credible supporting evidence and makes an unsupported factual allegation inconsistent with the record, he is not entitled to a hearing on his motion).

### 4.  "Fact 7":   Vernetta Harrison

Butler asserts counsel was constitutionally ineffective because she did not subpoena co-defendant Vernetta Harrison about the statements Harrison made to law enforcement when she was stopped on May 12, 2014 in Louisiana.    *See* ECF Doc.

542, PSR ¶ 23.    He does not identify what those statements were.    And, a review

of the referenced PSR paragraph shows that Harrison did not make any statements

to law enforcement.

According to the PSR, the Louisiana State Police stopped Harrison during a

lawful traffic stop.    Harrison was the driver and only occupant of the vehicle.    She

consented to have officers search her vehicle.    Based on the search, law

enforcement seized three kilograms of cocaine.    Additionally, Harrison was also in

possession of two telephones.    Pursuant to a warrant, law enforcement examined

the phones and recovered text messages indicating that someone using the number

(850) 418-1937 had directed Harrison regarding the transportation of $257,000 in

22 individual currency bundles.    Nothing in the PSR suggests Harrison gave a

statement to law enforcement.    Thus, there was no reason to subpoena Harrison and

if there was, Butler has not offered one.

Moreover, Harrison's involvement cannot be disputed.    Butler admitted via

the Factual Basis that Harrison was one of the people with whom he conspired.

ECF Doc. 377, ECF Doc. 615 at 11.    Harrison was also identified at sentencing and

in the PSR as someone Butler managed or supervised.    ECF Doc. 613 at 21, 23;

ECF Doc. 572, PSR ¶ 135.    Butler has not presented any evidence that Harrison

could have offered any testimony that would have changed the outcome of the proceedings.   He has not met his burden of showing counsel was constitutionally ineffective.

Butler also claims counsel should have objected to the reference in Paragraph 23 of the PSR to phone number (850) 418-1937 as belonging to Butler because there was no proof or evidence of same.   Once again, Butler's conclusory allegations are belied by the record.   The PSR states that "After reviewing call detail records from Butler's known telephone number(s), along with his prior call patterns, it appeared Butler was the individual providing those directions to Harrison.   Law enforcement knew Harrison transported both cocaine and illicit currency for the Butler drug trafficking organization."   ECF Doc. 542, PSR ¶ 23.   Thus, law enforcement clearly had evidence that the number belonged to Butler.   Counsel was not constitutionally ineffective for declining to make a meritless objection.

   5.  "Fact" 8, 11 and 14:   Dexter Locke

Butler claims counsel should have objected to the PSR or subpoenaed co-defendant Locke to show that only a buyer/seller relationship existed between the two men, and thus there was no conspiracy.   This argument is nonsensical.   The fact that Locke purchased cocaine from Butler does not negate the existence of a

conspiracy to distribute.    To the contrary, Butler admitted in the Factual Basis that he worked in conjunction with Locke (and other co-defendants) to further illicit activity and used Locke (and other co-defendants) to act as "facilitators/couriers for the cocaine and drug proceeds."    ECF Doc. 377 at 2.

In "Fact 11", Butler claims counsel was ineffective because she did not investigate his relationship with Locke, who was released from prison in April of 2014.    He claims he only knew Locke for one month, from October through November of 2014.    Butler also notes that Stone "beat the case he was arrested for" and Stone never admitted to law enforcement who was his source of supply.    ECF Doc. 698 at 8.

Butler does not explain the relevance of any of this information.    Butler fails to explain how these alleged facts would have any bearing on his sentencing.    As noted multiple times above, Butler admitted not only his involvement in the conspiracy but these others' as well.    ECF Doc. 377.    Thus, regardless of when he met Locke, Butler admits that he worked in conjunction with both Locke and Stone to further illicit activity.    ECF Doc. 377 at 2.    He admits that he laundered tens of thousands of dollars through Wells Fargo bank accounts and that Stone helped him. *Id.*    He does not offer any hint as to what information Locke could have provided

counsel that would have mitigated his sentencing exposure.

    6.  <u>"Fact 12":   Failure to Subpoena Witnesses, Generally</u>

    Butler asserts, generally, that counsel was constitutionally ineffective because she did not subpoena a laundry-list of witnesses, many of which were mentioned in previous "Facts".   He claims that if the witnesses had been permitted to introduce "their version of the facts," to rebut the picture painted by the Government, he "knows" the outcome of his case would have been different.   ECF Doc. 698 at 9. He lists Vernetta Harrison, Terrance Stone, Terrance Goodman, Aston Ingram, Dexter Locke, DEA Agent Sonya Bryant, FBI Agent Mark Sabol and Richard Hall of the DEA in Houston.

    What Butler claims to "know" does not turn a belief into a fact.   Again, he has failed to meet his burden under *Strickland* because he offers no evidence as to what testimony any of the witnesses could have offered that would have overcome his admission of having been involved with a conspiracy involving fifty kilograms or more of cocaine.

**C. "Fact 3":   Advice regarding Guideline Calculations and Cooperation**

    Butler contends counsel told him his "offense level base" was a 32.   ECF Doc. 698 at 5, 10.   He does not claim that he relied on this information in deciding

to plead guilty, and he does not appear to raise this as a ground for relief. Regardless, even if he were asserting this as a ground of error, it would have no merit.   A base offense level of 32 corresponds to at least 15, but less than 50 kilograms of cocaine (U.S.S.G. § 2D1.1(c)(4)), and Butler admitted that the conspiracy at issue involved in excess of 50 kilograms of cocaine (which gave him an offense level of 34).   ECF Doc. 542, PSR ¶ 129; U.S.S.G. § 2D1.1(c)(3).

Moreover, the court told Butler that by admitting to at least 50 kilograms of cocaine, he was admitting to that corresponding base offense level as a starting point for the guidelines.   *Id.* at 15.   The court further told Butler the district judge was not bound by the guidelines range, as that is merely "a starting point for an appropriate sentence."   ECF Doc. 615 at 13.   Thus, even if counsel had told Butler the wrong offense level, Butler could not have been prejudiced by any such misinformation.

Butler also asserts counsel was ineffective for advising him to meet with DEA Agent Sonja Bryant and for not giving Agent Bryant "the pictures of Anthony Perkins and his [Drug Trafficking Organization] prior to sentencing," when he was attempting to cooperate with the Government to obtain a downward departure. ECF Doc. 698 at 5.   He does not explain why he believes the advice to cooperate

was erroneous, or what difference the alleged pictures would have made. Moreover, as discussed below in Subsection E, the Court stated that it was sentencing Butler below the guideline range because of his attempts to cooperate with the Government.    Thus, he has not established prejudice.

### D. "Fact 4":    Conflict of Interest

Butler claims counsel failed to inform him of a conflict of interest when he retained her.    Specifically, counsel failed to advise him that she was already representing co-defendant Lamarcus Ries, who was arrested in Houston, Texas on November 15, 2014.    Butler is mistaken.    The record reflects that Ries was represented by court appointed CJA counsel, Donald Sheehan, who entered an appearance on Ries's behalf in February 2015.    ECF Doc. 268.

### E. "Fact 5":    Advice Concerning Downward Departure

Butler claims counsel was constitutionally ineffective because on March 30, 2015, she assured him that if he pleaded guilty, "Mr. Goldberg would grant some downward departure points."    ECF Doc. 698 at 6.    This argument has no merit. First, what counsel told Butler was not incorrect.    Butler received the full three-level reduction for acceptance of responsibility for entering into a guilty plea.    *See* ECF Doc. 542, PSR, ¶s 139-40.    Additionally, while the Government has no

authority to "grant" a downward departure, during the sentencing hearing, the Government's counsel, Mr. Goldberg, agreed with Butler's counsel that Butler cooperated with the Government.    Mr. Goldberg told the Court that Butler "was debriefed by federal agents."    ECF Doc. 613 at 51.    Furthermore, Mr. Goldberg told the Court, Butler "should absolutely receive credit for that.    The Government does not back away from that."    *Id.*    And, in sentencing Butler, the Court specifically stated that it was imposing a 25-year, rather than 30-year sentence, because of Butler's age and his attempted cooperation with the Government.    ECF Doc. 613 at 53.

Second, even if Butler's counsel was incorrect, he cannot show he was prejudiced by reliance on such a statement.    The written plea agreement Butler executed specifically stated "[b]oth parties reserve the right to advise the District court and other authorities of their versions of the circumstances surrounding the offenses committed by the Defendant … to present evidence and make arguments pertaining to the application of the sentencing guidelines … including sentencing recommendations, and whether departure upward or downward is appropriate. ECF Doc. 378 at 3.    Butler admitted he signed the plea agreement, that he read the plea agreement before signing it, and that he understood everything in it.    ECF Doc.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

615 at 9.    Additionally, Butler confirmed for the Court during the plea colloquy
that no one promised him anything to get him to enter the plea.    *Id.* at 17.

Third, Butler's only support for this argument is a single reference to Page 14,
line 8 to page 15, line 25, of the sentencing hearing transcript.    ECF Doc. 613.
That reference, however, has no bearing on this purported ground for relief because
it involves a discussion between counselors and the Court regarding whether Butler
should receive a four point enhancement for being the manager/organizer/leader of
the conspiracy.    The application of this adjustment is not guided by whether a
defendant pleaded guilty, but by the offense conduct.

Butler also asserts that counsel made incorrect legal arguments at sentencing.
Butler does not specifically identify those legal arguments and does not state how
the arguments were wrong.    Instead, he merely references page 23, line 2 and page
24 through 26, lines 1-11, and claims that counsel was ineffective because the Court
disagreed with her.

Those pages involve a discussion about whether Butler has to manage or
supervise five or more participants in the conspiracy to get a 4-level enhancement.
Defense counsel argued that if Butler is acting as a buyer/seller/supplier then the
individuals that he is supplying cannot count as the people he is also supervising or

managing for purposes of the enhancement.    ECF Doc. 613 at 23.    The Court disagreed and further determined that the enhancement applies as long as Butler is determined to have supervised or managed at least one of the co-conspirators.    *Id.*

The fact that counsel's argument was not accepted by the district court, alone, does not render counsel's performance ineffective.    Butler has not suggested what argument counsel could or should have made that would have changed the outcome of his sentencing.    Indeed, he cannot show he was prejudiced by the fact that counsel made an argument that did not prevail because had no argument been made, the enhancement most certainly would have been adopted.    Moreover, as defense counsel noted, it was necessary for her to make the argument to preserve it on appeal. *Id*.    Thus, no relief is warranted on this claim.

### F.  "Fact 8":   Currency Counting Video

Butler also asserts as part of "Fact 8" that counsel should have objected to the introduction of a video covertly recorded by Ingram on his phone allegedly showing Butler counting $500,000 in U.S. Currency.    The Government introduced the video to show the quantity of proceeds Butler was making from his drug trafficking activity, and in doing so it noted there was no evidence of any other co-defendant claiming, "such a large share of the fruits of the crime."    ECF Doc. 613 at 8-10.

Defense counsel was willing to stipulate to the content of the video, but it was still published.    *Id.*

Butler claims "you cannot see no money especially $500,000."    ECF Doc. 698 at 7.    The record shows otherwise.    Indeed, the Government explained at the hearing, as the video was playing, that "the Defendant is seated at the table counting cash," and that "what the Court will notice is the Defendant sitting in front of a pallet of cash counting more of it…."    ECF Doc. 613 at 10.

Butler also faults counsel for failing to show that Locke and Rodney Ries together spent over $100,000 on jewelry, which presumably would have rebutted the Court's conclusion that Butler was the only one living a lavish lifestyle.    He notes that Paragraph 60 of the PSR reflects that Locke had bragged to an unknown male that Locke had been responsible for the distribution of 21 kilograms of cocaine in the past week and a half.    The fact that other co-defendants may have been making large amounts of money from the DTO neither diminishes Butler's involvement and responsibility nor negates his leadership role, which led to his offense enhancements. Additionally, Butler does not state what information counsel should have obtained or presented to "rebut" the Court's conclusion.

Indeed, as the Government pointed out during the sentencing hearing, the

Court had sentenced almost every co-defendant and there was no evidence of anyone else claiming such a large share of the fruits of the crime.   ECF Doc. 613 at 10. Additionally, in the Factual Basis, Butler admitted that he funneled "cocaine derived currency through accounts operated by [him] in many thousands of dollars during the course of the conspiracy."   ECF Doc. 377 at 2.   Accordingly, Butler's claim of ineffective assistance counsel is not only lacking in support, but also directly refuted by the record.

### G. "Fact 9":   Change of Venue

Butler asserts that counsel told him she would file a motion to have the case transferred to Houston, Texas, because no crime had been committed in Pensacola, Florida, since all of the purchases were made in Houston.   Regardless of what counsel may have told Butler, there was a sufficient nexus in Pensacola to make venue proper in this jurisdiction.   The Superseding Indictment states that the offense conduct took place in the Northern District of Florida.   ECF Doc. 131.   As set forth in the Factual Basis, "Butler conspired to distribute and possess with intent to distribute in excess of 50 kilograms of cocaine between the Houston, Texas are and Pensacola, Florida."   ECF Doc. 377 at 2.   Additionally, "Butler was a source of supply for transporting/distributing cocaine from the Houston area into …

Pensacola, Florida.   *Id.* at 1.   Moreover, payment was to be made in Pensacola. *Id.*

Thus, there would have been no basis for counsel to have made the request. Counsel cannot be ineffective for declining to make a meritless motion.   *See Meeks v. Moore,* 216 F.3d 951, 961 (11th Cir. 2000) (counsel is not ineffective for failing to make meritless motion for change of venue).   Moreover, Butler certainly knew by the time of the plea proceedings that there had been no change of venue request and that he would be sentenced by this Court, yet he chose to proceed with his guilty plea.   Thus, Butler cannot show that he was prejudiced by counsel's failure to move for a change of venue.

### H. "Fact 10":   "Source of Supply" Status

Butler next faults counsel for not persuading the Government "to change the charge to a buyer/seller or source of supply."   ECF Doc. 698 at 8.   He complains about the characterization of his status vis a vis the co-defendants because he "played the same role" to Dexter Locke and Rodney Ries as Charlie Stearns and was "only a source of supply" to Locke.   To the extent Butler attempts to raise a factual challenge to his guilt, such a claim is foreclosed.

He has already admitted he was a "source of supply," that he "arranged" drug

transactions and that he used his co-defendants as facilitators/couriers for the cocaine and drug proceeds. *See* ECF Doc. 377. His admissions were sufficient to support his conviction and sentence, but the Government also produced additional incriminating testimony about Butler's financial records from Internal Revenue Service Special Agent Christopher Perkerol. ECF Doc. 613 at 32-34.

He also claims counsel was remiss in not subpoenaing DEA Agent Sonja Bryant "or other parties who could have changed the outcome" of his sentence. ECF Doc. 698 at 8. Butler does not identify these other persons, how counsel should have learned about them, what they would have known, or how testimony from them or Agent Bryant would have changed the outcome of his sentence. Thus, Butler has not established that his attorney was constitutionally deficient under *Strickland*.

## I. "Fact 14":   Drug Quantity

In Butler's final claim he appears to contend that only eighteen (18) kilograms of cocaine were involved in the conspiracy.[5] He suggests that all the other cocaine attributed to him came from statements that were not supported. This argument,

---

5 Butler contends that is why counsel told him his offense level was 32, but as discussed in subsection C, any such misstatement is not only belied by the record, but was not prejudicial due to Butler's admissions and the court's statements at the rearraignment.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

like his others, is belied by the record.   Not only did the Factual Basis state that Butler conspired to distribute in excess of 50 kilograms of cocaine, but, as stated above, the Magistrate Judge specifically pointed out to Butler that he was admitting to at least 50 kilograms or more of cocaine and he acknowledged he understood that admission.   ECF Doc. 615 at 15.   Butler's admission is presumptively trustworthy and is considered conclusive absent compelling evidence showing otherwise.   *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987). Counsel was not constitutionally ineffective for not challenging the drug quantity or not presenting unspecified evidence from other co-conspirators in support of a lesser amount.

## IV.    CONCLUSION

An evidentiary hearing is not necessary to resolve Butler's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.   Butler's claims of ineffective assistance of counsel are universally conclusory or unsupported, in addition to precluded by the admissions made as part of his guilty plea.   Therefore, his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be denied in its entirety.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC

Based on the foregoing, it is respectfully RECOMMENDED:

1.   The Motion under 28 U.S.C. § 2255 (ECF Doc. 698) be DENIED.

2.   A certificate of appealability be DENIED.

At Pensacola, Florida, this 5th day of May, 2020.


s/ *Hope Thai Cannon*
Hope Thai Cannon
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:14cr98/TKW/HTC; 3:17cv672/TKW/HTC